**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ERNEST SMITH III #1611824** | § | |
| | § | |
| **V.** | § | **A-010-CA-397-JN** |
| | § | |
| | § | |
| **OFFICER NOLEN #6475,** | § | |
| **OFFICER WALKER #4814,** | § | |
| **OFFICER WILL RAY and** | § | |
| **OFFICER PURCELL** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE JAMES R. NOWLIN
       UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Defendants' Motion for Summary Judgment (Document No. 12); Plaintiff's response thereto (Document No. 14); and Defendants' reply (Document No. 15). Plaintiff, proceeding pro se, filed his complaint in state court. Defendants timely removed the case to this Court.

**I. BACKGROUND**

At the time he filed his complaint, Plaintiff was an inmate incarcerated in the Bartlett State Jail. Plaintiff files his complaint alleging four Austin police officers used excessive force during his arrest. Specifically, Plaintiff alleges:

> On the 23rd Day of May 2009 At 12th and Cometa Street 4 officers from A.P.D. then and there use assessive force by tazoring me four times one after the other with about one minute in between tazorings and with at least three and possibly four tazor guns. Officer Nolen #6475, Officer Walker #4814, Officer Will Ray, and Officer Purcell all officers of Austin Police Department almost killed me and cause considerate pain with assessive tazoring.  I even believe my blood pressure is now high to the point of medication because I never had a problem with high blood pressure in the past.

Plaintiff sues Officer Nolen, Officer Walker, Officer Will Ray and Officer Purcell.  He seeks an unspecified amount of monetary damages for pain and suffering and for "a cronic disease [he'll] now posses a lifetime."

Defendants move for summary judgment.  The assert they are entitled to qualified immunity.  With regard to claims made against them in their official capacities they argue Plaintiff failed to identify any custom, practice or policy that caused his alleged constitutional deprivation.

## II. ANALYSIS

A.    Standard of Review Under Fed. R. Civ. P. 56(c)

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996);  Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992).  When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.  Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995);  FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process.  Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986).  The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense.  Id. at 322,

106 S. Ct. at 2552.  In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses.  Id. at 323-24, 106 S. Ct. at 2554.  At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial."  Id. at 324, 106 S. Ct. at 2553.  The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations.  FED. R. CIV. P. 56(e); Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party.  The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court."  James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586, 106 S. Ct. 1356)). To the extent facts are undisputed, a Court may resolve the case as a matter of law.  Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

B.    Qualified Immunity

Defendants assert their entitlement to qualified immunity.  The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Immunity in this sense means immunity from suit, not merely from liability.  Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992).  "Qualified immunity is designed to shield from civil

liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).  To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria—whether plaintiff's facts allege a constitutional violation—must be decided at the outset. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  Recently, however, the Court reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808 (2009).

　　　　1.　　Officers Walker and Ray

The summary judgment evidence shows that Officers Walker and Ray did not use any force in connection with Plaintiff's arrest. They merely restrained Plaintiff and applied handcuffs to his wrists.  Plaintiff does not allege any injuries from being restrained or from the application of handcuffs. As such, Officers Walker and Ray are entitled to qualified immunity.

　　　　2.　　Officers Nolen and Purcell

Claims of excessive force in the course of a seizure are analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865 (1989). "To succeed on an

4

excessive force claim [under 42 U.S.C. § 1983], a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001) (internal quotation marks omitted).  "In gauging the objective reasonableness of the force used," the court "must balance the amount of force used against the need for that force." Ikerd v. Blair, 101 F.3d 430, 434 (5th Cir. 1996).  Construing the facts most favorably to Plaintiff, the evidence reflects that Officers Nolen and Purcell did not engage in excessive use of force against Plaintiff or did not act in an objectively unreasonable manner.

According to Defendants, at approximately 4:50 p.m. on May 23, 2009, APD received several 911 calls reporting that a naked, bleeding black male, later identified as the plaintiff, was walking westbound on 12th Street near the intersection of Springdale Road in Austin, Texas.  See Defendants' Exh. A, Affidavit of Gary Christenberry, Attachments 3, 4.  Four police officers, Nolen, Ray, Purcell and Walker (the defendants) who were in the area on another call, either were dispatched to search for the plaintiff, or happened upon the plaintiff while in the area.  See Exh. B, Affidavit of Anthony Nolen, ¶ 8; Exh. C, Affidavit of Will Ray, ¶ 4; Exh. D, Affidavit of James Purcell, ¶ 8; and Exh. E, Affidavit of Adam Walker, ¶ 4.  All of the defendants were on-duty as City of Austin police officers, in uniform, and in marked patrol cars.  Id.

According to Defendant Nolen, he located the plaintiff in the middle of the street, at the intersection of 12th and Cometa St.  See Exh. B, ¶ 9.  Defendant Walker arrived at the same time as Defendant Nolen.  Id. at ¶ 10; Exh. E, ¶ 6.  Nolen observed that the plaintiff was completely naked, was large and muscular, had blood on him, acted as if he were intoxicated on drugs or alcohol, and was assaulting two individuals.  See Exh. B, ¶ 9.  Nolen indicates a small crowd had also gathered

in the area of the disturbance.  Id.  According to Nolen, he exited his vehicle, drew his Taser, and began ordering Plaintiff to get on the ground and put his hands behind his back.  See Exh. B, ¶ 10; Exh. E, ¶ 6.  Defendants indicate Plaintiff initially complied.  Id.  According to Defendants, Defendant Walker returned to his car to get gloves, so he could place Plaintiff under arrest without getting blood on his hands.  See Exh. E, ¶ 8.  In the meantime, Defendants Ray and Purcell arrived. See Exh. C, ¶¶ 5-6; Exh. D, ¶ 11.

According to Defendants, as the officers approached Plaintiff to take him into custody, the plaintiff ignored Nolen's commands to stay on the ground, got to his feet, and lunged in the direction of Purcell.  See Exh. D, ¶ 12.  Defendant Purcell fired his Taser at Plaintiff, striking him in the chest. Id.  Defendants assert Plaintiff fell to the ground and began to roll, wrapping the wires from Defendant Purcell's Taser around his body.  Id. at ¶ 13.

When Defendants approached, Plaintiff allegedly began to stand up again, ignoring the officers' commands to remain on the ground.  See Exh. B, ¶ 12.  As Plaintiff began to stand, Defendant Nolen fired his Taser at Plaintiff, striking him in the back.  Id.  Although Plaintiff fell to the ground, he continued to kick and punch at the officers and ignore their commands.  See Exh. D, ¶ 15.  Defendant Purcell, believing the prongs from his Taser were no longer in contact with Plaintiff, but noting that the wires were still in contact with Plaintiff, administered a "drive-stun" to Plaintiff's upper left leg/buttocks.  Id.  Defendants indicate Purcell's second Taser deployment was momentarily effective, and Ray and Walker moved in again to attempt to place the plaintiff in handcuffs to gain control and place him under arrest.  See Exh. C, ¶¶ 10-11; Exh. E, ¶ 10.  As Plaintiff kicked at the officers, and believing that the Taser prongs were still in contact with Plaintiff, Defendant Nolen activated his Taser a second time.  See Exh. B, ¶¶ 14-15.  Defendants assert Ray

and Walker never discharged their Tasers, or any other weapon.  See Exh. A, Attachments 5,6; Exh. C, ¶ 14; Exh. E, ¶ 11.

During the fracas with Plaintiff, Defendants assert Ray and Walker attempted several times to place Plaintiff in handcuffs.  See Exh. C, ¶¶ 8-13, Exh. E, ¶¶ 9-11.  During one attempt, Ray approached Plaintiff, reached for his right arm and felt a stabbing pain in his leg.  Ray observed that Plaintiff bit him on his right leg.  See Exh. C, ¶¶ 11-12.

Although Plaintiff continued to thrash and kick, the Defendants maintain they were able to hold him down and place him in handcuffs.  See, e.g. Exh. C., ¶ 13.  EMS arrived on the scene soon thereafter.  See Exh. D, ¶ 18.  Defendants continued to hold down Plaintiff while EMS treated him. Id.  When asked, Plaintiff admitted that he had used PCP earlier in the day.  Id.  Plaintiff was transported to Brackenridge Hospital by EMS.  Id.

In his response to Defendants' Motion for Summary Judgment Plaintiff objects to the video evidence, because none of the videos show the beginning of the altercation.  He contends the video evidence is suspect and objects that the videos fail to show his alleged assault of the two victims. Plaintiff does not deny he assaulted the two victims.  Rather, he suggests he may have been the victim of the assault, because he was the one with blood all over him.  Plaintiff also does not deny he disobeyed the officers orders to stay on the ground.  Instead, he states he got to his feet because he was being bitten by ants.  He also states after he was tased the first time, he became confused and wanted more than anything not to be tased again.

Plaintiff fails to present any evidence to address the issue of Defendants' qualified immunity. The summary judgment evidence offered by Defendants, affirmatively demonstrates that Defendants did not violate Plaintiff's constitutional rights to be free from excessive force, and that they are

7

entitled to qualified immunity.  Further, even if Defendants had violated any of Plaintiff's clearly established constitutional rights, the undisputed evidence shows that their behavior was objectively reasonable under the circumstances.  Specifically, Plaintiff fails to refute the facts that he was naked with blood on his body, high on PCP, in the middle of an intersection; that he ignored commands to stay on the ground, aggressively resisted arrest, and bit Defendant Ray on the leg hard enough to cause injury.  Although the video evidence did not capture the entire incident, it does support the officers' affidavits and shows Plaintiff lunged at the officers and actively resisted arrest.  Plaintiff does not provide any evidence that the officers should have known, or that he indicated to them in any way, that the reason he was repeatedly disobeying commands and biting and kicking was because of alleged ant bites on his stomach. Accordingly, Defendants Nolen and Purcell are entitled to qualified immunity.

C.    Official Capacity Claims

Defendants are also entitled to summary judgment with regard to Plaintiff's claims made against them in their official capacities.  A political subdivision cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; in other words a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior.  Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992).  The standard for holding a local government unit responsible under § 1983 requires that there be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right.  Id;  Collins v. City of Harker Heights, Tex., 916 F.2d 284, 286 (5th Cir. 1990), aff'd, 503 U.S. 115, 112 S. Ct. 1061 (1992).  Thus, the City of Austin would violate an individual's rights only through implementation of a formally declared policy, such as direct orders or promulgations or through informal acceptance of a course

of action by its employees based upon custom or usage. <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 768 (5th Cir. 1984), <u>cert. denied</u>, 472 U.S. 1016, 105 S. Ct. 3476 (1985). A single decision made by an authorized governmental decisionmaker to implement a particular course of action represents an act of official government "policy." <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986). Plaintiff failed to identify a policy, practice or custom of the City of Austin that caused a deprivation of his constitutional rights. Accordingly, summary judgment should be granted.

### III. RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. <u>Battles v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); <u>Douglass v. United Servs. Auto. Assoc.</u>, 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of September, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE